# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,
   *Plaintiff*,

v.         Case No. 15-10150-01 JTM

**SHANE COX,**
   *Defendant.*

---

## MOTION TO DISMISS
---

The defendant, Shane Cox, by and through his attorney, Steven K. Gradert, Assistant Federal Public Defender for the District of Kansas, moves this Court to dismiss the Indictment in the instant case.

## <u>FACTS</u>

The defendant, Shane Cox, was manufacturing and selling silencers that were designed to fit on various firearms in order to suppress the sound emitted upon firing the firearms. Mr. Cox was not a registered or licensed firearms dealer. None of the silencers or other firearms possessed by Mr. Cox contained serial numbers, and the firearms and silencers were likewise, not registered.

Mr. Cox was advertising these silencers via Facebook and by word of mouth. He did not attempt to conceal the fact that he was doing these things. He did not believe he was in violation of the law because he was under the

impression that the Kansas legislature and Governor of Kansas had passed laws that authorized him to do what he was doing.  The law, K.S.A. 50-1201 through 50-1211 is commonly referred to as the "Second Amendment Protection Act."  This law declares that any firearms made and retained in-state are beyond the authority of Congress and its enumerated Constitutional power to regulate commerce among the states.  Mr. Cox relied on his State of Kansas representatives and did not believe he was violating the law.

## SUMMARY OF THE ARGUMENT

The defendant submits that all of the charges the government have brought against him and contained in the Indictment should be dismissed.

We are asking this Court to determine that neither the National Firearms Act of 1934, 26 U.S.C. Chapter 53, nor the Federal Gun Control Act of 1968, 18 U.S.C. Chapter 44, contravene or preempt the Kansas Second Amendment Protection Act, which decrees that neither firearms or ammunition that are manufactured in the State of Kansas and remain within the State are subject to federal law or regulation.

Kansas and many other states have enacted laws aimed at nullifying federal firearms regulation.  Many of the laws, including the Kansas Act, appear to have been modeled on the Montana Firearms Freedom Act, Mont. Rev. Code § 30-20-101, et. seq., (2009).  The theory behind these laws is that

firearms and parts manufactured within the state and remaining within state borders are out of the reach of federal power to regulate under the Commerce Clause. U.S. Cont. art I, § 8, cl. 3.

The Montana Firearms Freedom Act and its attempt to nullify federal firearms law was short-lived. Gary Marbut, a firearms rights advocate, joined by the Montana Shooting Sports Association and the Second Amendment Foundation, sued Attorney General Eric Holder for declaratory judgment and injunctive relief. A district judge ruled that the federal governments Commerce Clause authority extended to firearms regulation, even if the product did not cross state lines. *Montana Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at * 1 (D. Mont. August 31, 2010). The Ninth Circuit affirmed the conclusion that Congress can validly regulate firearms, even within the borders of a single state, and thus held the Montana Firearms Freedom Act was preempted by federal law. *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981-83 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 955, U.S. Jan. 13, 2014).

## ARGUMENT

Despite the decision in *Montana Shooting Sports Ass'n v. Holder*, *Id.*, this Court should disregard the decision of the Ninth Circuit and find that the Second Amendment Protection Act of Kansas is not preempted and renders the United States attempt to enforce criminal violations under the Commerce Clause, or taxing power as an unconstitutional violation of the Tenth Amendment's limitation on the Federal Government's authority to invade the powers reserved to the States.

## I.    Title 26, Section 5861 Is an Unconstitutional Exercise of Congress' Power to Tax.

The defendant is charged with violating various subsections of this statute related to possessing, transferring and making firearms that are not registered in the National Firearms Registration and Transfer Record, and conspiracy with his codefendant to do so.  The items are silencers, destructive devices (hand grenades), and a short-barreled rifle.  The federal government's authority to regulate the firearms in question, and the authority for the existence of the penal statute utilized in count one is the power to tax, i.e., to collect revenue.  The defendant's position is the current statute and the prosecution in this case have nothing whatsoever to do with collecting

revenue, or taxing someone, and thus the prosecution in a federal court is unconstitutional.

The defendant is charged with having violated 26 U.S.C. § 5861(d) which makes it illegal to possess an unregistered firearm. Title 26, of course, is the collection of statutes known as the "Internal Revenue Code." Congress requires the payment of a $200.00 tax for the transfer or making of certain weapons. 26 U.S.C. § 5811, 5821. Ostensibly, in order to keep track of these taxes, to determine what taxes are due, and to ensure enforcement, all firearms must be registered, and the possession of all unregistered firearms is penalized. 26 U.S.C. § 5841, 5861.

On its face, this scheme, if it did no more than that described above, would probably be within the legislative powers created and limited by the Constitution. But the statutory scheme goes much further, and is clearly an attempt to regulate the possession of certain firearms, and in particular, silencers, as described in this Indictment. Congress has used the power to tax as a subterfuge to regulate the possession of certain weapons, and to punish severely the possession of those weapons not brought within the federal regulation scheme, thus the statute is unconstitutional.

In the words of the Supreme Court:

The Constitution created a Federal Government of limited powers. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or the people." U.S. Const., Amdt. 10. ... As James Madison put it.

"The powers delegated by the proposed Constitution to the federal government are few and defined."

The Fifth Circuit has noted that:

[t]he National Firearms Act, ..., 26 U.S.C. § 5845(a), is grounded on Congress taxing power under Article I, Section 8, Clause 1. *Sonzinsky v. United States*, 300 U.S. 506, 507, 57 S. Ct. 554, 81 L.Ed. 772 (1937); *United States v. Miller*, 307 U.S. 174, 59 S. Ct. 816, 83 L.Ed. 1206 (1939). Its prohibitions are keyed to the imposition of an excise tax on the business of dealing in such weapons and on transfers of them, together with related requirements for registration of the dealer, the transfers, and the weapons. *See*, *Sonzinsky*; *Miller*; *Haynes v. United States*, 390 U.S. 85, 88 S. Ct. 722, 19 L.Ed.2d 923 (1968); *United States v. Freed*, 401 U.S. 601, 602-07, 91 S. Ct. 1112, 1115-1117, 28 L.Ed.2d 356 (1971).

*United States v. Lopez*, 2 F.3d 1342 (5th Cir. 1993), *aff'd*, 514 U.S. 549, 115 S.

Ct. 1624 (1995).

The Fifth Circuit has also stated:

"... Section 5861(d) [of Title 26] making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in [26 U.S.C.] section 5811" and "the constitutional bedrock for the statute" is "the power to tax" rather than "the commerce power." *United States v. Ross*, 458 F.2d 1144, 1143 & n.3 (5th Cir. 1972); *See also Sonzinsky v. United States*, 300 U.S. 506, 57 S. Ct. 554, 81 L.Ed.

6

772 (1937); *United States v. Rock Island Armory, Inc.*, 773 F. Supp. 117 (C.D. Ill. 1991).

*United States v. Parker*, 960 F.2d 498, 500 (5th Cir. 1992).

The statute and the statutory provisions that are relied upon by the government to make the allegations in this case, have nothing to do with collection of taxes, and everything to do with the regulation of the possession of the weapon: to decide who can or cannot possess the weapon and to be able to track the possession of those weapons. The defendant is not here complaining of the oppressiveness of the tax, or the fact that the <u>tax</u> creates restrictions on the possession of certain firearms. As the Fifth Circuit noted:

> ... [e]very tax is regulatory to some extent. The test of validity is whether on its face the tax operates as a revenue generating measure and the attendant regulations are in aid of a revenue purpose.

*United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir.), *cert. denied*, 409 U.S. 868 (1972).

The rationale for the legislation in question is as follows:

> ... Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax.

*Id.*

The defendant would have little quarrel with the Act if that is all there was to it, but there is more.  The National Firearms Act not only requires registration of firearms, it also requires any individual who wishes to make or transfer a firearm to request the permission of the federal government to do so, **and the federal government may deny permission!** ("A firearm shall not be transferred unless (1) the transferor ... has filed with the Secretary a written application, in duplicate, for the transfer and registration of the firearm, ... and (6) the application form shows that the Secretary has approved the transfer and the registration of the firearm to the transferee. Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law."  26 U.S.C. § 5812; "No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm ... and obtained the approval of the Secretary to make and register the firearm .... Applications shall be denied if the making or possession of the firearm would place the transferee in violation of law." 26 U.S.C. § 5822.  "Each importer, maker, and transferor of a firearm shall, prior to importing, making, or transferring a firearm, obtain authorization ... to import, make, or transfer

the firearm, and such authorization shall effect the registration of the firearm by this section."  26 U.S.C. § 5841(c)).

In other words, the statute gives the federal government the power to prohibit someone from registering a weapon, then criminalizes the possession of the weapon because it is not registered.  Thus, the National Firearms Act allows the federal government to punish a person for possessing the weapon without any relation, rational or otherwise, to the collection of revenue.

This is clear, because Congress has the authority to tax conduct that is unlawful.  *Marchetti v. United States*, 390 U.S. 39, 44 (1968) ("The Court has repeatedly indicated that the unlawfulness of an activity does not prevent its taxation.")  Therefore, whether or not possession of a firearm silencer is lawful, Congress can tax it and require its registration, so long as Fifth Amendment guarantees against self-incrimination are met.  *Sonzinsky* (original "National Firearms Act" constitutional on its face); *Haynes v. United States*, 390 U.S. 85, 100 (1968) (original version of "National Firearms Act" unconstitutional because it required compelled self-incrimination.); *United States v. Freed*, 401 U.S. 601, 605 (1971) ("National Firearms Act" as amended, does not violate self-incrimination clause of the Constitution.).

Furthermore, the fact that the penalties for possession of the weapon are so harsh in relation to the tax loss indicates collection of taxes, at least

with respect to firearm silencers, was merely a guise. The tax for transferring or making a silencer is $200.00. 26 U.S.C. § 5821. The penalty for possessing a silencer that is unregistered is up to 10 years imprisonment and up to a $10,000.00 fine. This penalty applies even though the government refused to collect a tax or register a firearm! *United States v. Ardoin*, 19 F.3d 177 (5th Cir.), cert. denied, 513 U.S. 933 (1994).

It is true that the Supreme Court has upheld a facial challenge to the National Firearms Act in the *Sonzinsky* case. *Sozinsky,* 300 U.S. at 514. But, that decision is not dispositive. The National Firearms Act was greatly changed in 1968 pursuant to Public Law 90-618. The statute as it was drafted when the Supreme Court reviewed it in *Sonzinsky* did not allow the federal government to refuse to permit the registration of a weapon, and the subsequent collection of taxes, while at the same time allowing the federal government the authority to prosecute the possession of the unregistered weapon. Thus, given the statute as it existed when the Supreme Court reviewed it in 1937, the Court was able to state that:

> The case is not one where the statute contains regulatory provisions related to a purported tax in such a way as has enable this Court to say in other cases that the latter is a penalty resorted to as a means of enforcing the regulations. ... Nor is the subject of the statute described or treated as criminal by the taxing statute. ... **Here [the statute] contains no regulation other than the mere registration provisions, which are**

10

> **obviously supportable as in aid of a revenue purpose.**  On
> its face it is only a taxing measure, ....
>
> ...
>
> Here the annual tax of $200 is productive of some revenue.

*Sonzinsky*, 300 U.S. at 513-14. (Emphasis added.)

But today, we are faced with a much different statute which dictates the conclusion that the statute does now in fact provide a penalty resorted to as a means of enforcing the regulations, and the subject of the statute is treated as criminal by the taxing statute. Most importantly, today the statute does contain a regulation other than the mere registration provisions, which are not at all supportable as in aid of a revenue purpose.  On its face, and as applied, the statute as amended is much more than a taxing measure. The fact is that the Act as amended gives the government the discretion to decide who can register a firearm, prohibits the registration of weapons the government determines may not be legally made, transferred, or possessed, and then criminally punishes the failure to register the weapon.  The government cannot justify this as a tax measure, because there is an ever present reality that no tax will be collected. The statute is unconstitutional on its face and as applied because it goes beyond the power to tax.  It exceeds the enumerated powers provided by the constitution.  This prosecution has nothing whatever to do with the gathering of revenue.

11

The Supreme Court has struck down statutes that rely upon the tax power as a guise to regulate.  The Court held such statutes to be invalid in *United States v. Constantine*, 296 U.S. 287 (1935), *United States v. LaFranca*, 282 U.S. 568 (1931), *Bailey v. Drexel Furniture Co.* (Child Labor Tax Case), 259 U.S. 20 (1922), and *Hill v. Wallace*, 259 U.S. 44 (1922).  The continued validity of these cases was made clear in the recent case of *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767 (1994), wherein the Supreme Court favorably cited the *Child Labor Tax Case*, *Constantine*, and *LaFranca.  Kurth Ranch*, 511 U.S. at 779.  The Court in *Kurth Ranch* pointed out that "there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics as punishment." *Id.*  quoting *Child Labor Tax Case*, 259 U.S. at 38.

The fact that some revenue is collected by the registration of firearms does not defeat the defendant's constitutional challenges in this case.  The broad discretion the ATF possesses to deny registration of all firearms, including silencers like the one in the current Indictment, causes 26 U.S.C. § 5861(d) to lose its constitutional legitimacy as an aid to tax collection. *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992).  The Court in *Dalton* held that Title 26 § 5861(d) was unconstitutional in regard to machineguns

12

because that firearm was illegal and therefore could not legally be registered. *Id.* at 126. The government argued that the National Firearms Act still produced revenue on this type of firearm because one who unlawfully made a machine gun was assessed a tax. *Id.* at 125. The Court held that the fact that some revenue may be generated by taxing the illegal making of a firearm does not legitimize the registration requirement for possession under § 5861(d). *Id.* Likewise, the small amount of revenue generated by the making of silencers does not justify the criminal punishment for the possession of unregistered silencers.

II.    **Title 26 Section 5861(d) Is Not Valid Under the Commerce Clause.**

Congress has the power to regulate commerce under Article I, Section 8, Clause 3 of the Federal Constitution.   In *Ardoin*, the Fifth Circuit acknowledged that the "constitutional bedrock" for the National Firearms Act is the "power to tax." *Ardoin*, 19 F.3d at 179. Yet, the Court then found that the regulation of machine guns could be upheld under the interstate commerce clause.   *See id.* at 180.   Counsel respectfully submits that this decision is just plain wrong. As Judge Wiener points out in his dissent in *Ardoin*, 19 F.3d at 182-88, which the defendant adopts as support for this

motion, Congress did not pass the National Firearms Act as an attempt in any way, shape, or form, to regulate interstate commerce. It was explicitly passed as a tax measure to gather revenue.  On its face, it does not seek to ban the possession of weapons in or affecting interstate commerce, it seeks to tax the transfer or production of weapons, whether or not they affect, substantially or otherwise, interstate commerce.

The Supreme Court has articulated "three general categories of regulation in which Congress is authorized to engage under its commerce power." *Gonzales v. Raich*, 545 U.S. 1, 125 S. Ct. 2195, 2205, 162 L. Ed. 2d 1 (2005).   These are: 1) the channels of interstate commerce; 2) the instrumentalities of interstate commerce, and persons or things in interstate commerce; and 3) activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995); *Perez v. United States*, 402 U.S. 146, 150, 91 S. Ct. 1357, 28 L. Ed. 686 (1971).  Penalizing possession of an unregistered firearm does not fit within any of these three categories.

First, Congress may regulate the channels of interstate commerce. *Lopez*, 514 U.S. at 558.  Under this, Congress regulates interstate commerce itself; barring from the channels of interstate commerce classes of goods or people.  *United States v. Rybar*, 103 F.3d 273, 288-89 (3d Cir. 1996), *cert.*

*denied*, 522 U.S. 807 (1997) (Alito, J., dissenting).  The crucial component of this regulation is the movement of goods or people through the channels of interstate commerce.  The mere intrastate possession of a good cannot be upheld under Congress' power to regulate the channels of interstate commerce.  *United States v. Patton*, 451 F.3d 615, 621 (10th Cir. 2006) *cert. denied*, 549 U.S. 1213 (2007) (holding that a prohibition on the mere intrastate possession of body armor was not justified by Congress' power to regulate the channels of interstate commerce).  The statute in question here does no more than prohibit intrastate possession of unregistered firearms and therefore is not a valid exercise of this form of regulation. 26 U.S.C. § 5861(d).

This would be a different situation if, perhaps, the statute required some movement in commerce, thus bringing it into the power to regulate the channels of commerce.  *See e.g., United States v. Dickson*, 632 F.3d 186, 192 (5th Cir.) *cert. denied*, 131 S. Ct. 2947 (2011) (upholding a statute that required the Government to establish that pornography was produced using materials that had been in interstate commerce pursuant to Congress' power to regulate channels of commerce); *United States v. Looney*, 2015 U.S. App. LEXIS 5597, at *6 (5th Cir. 2015) (noting that the timing and purpose of travel within interstate commerce of materials later used for producing pornography was irrelevant; so long as the materials had once been within

15

the channels of interstate commerce, Congress could properly regulate them). However, the statute at hand does not have such a jurisdictional hook to bring it under this form of regulation by Congress.   26 U.S.C. § 5861(d). Simply prohibiting possession of an item does not affect the movement of goods within the channels of commerce.

Second, Congress may regulate and protect "the instrumentalities of interstate commerce, or persons or things in interstate commerce." *Lopez*, 514 U.S. at 558.   The "instrumentalities" are the means of interstate commerce and the "persons or things in interstate commerce" are the persons or things being transported by the instrumentalities among the states.   *See e.g., Lopez*, 514 U.S. at 558; *Perez*, 402 U.S. at 150.   This form of regulation extends to intrastate activities that threaten the means of interstate commerce. *Perez*, 402 U.S. at 150.

In *United States v. Patton*, the Court noted that body armor was not an instrumentality, and that the statute prohibiting its possession did not protect it while moving in interstate shipment.   451 F.3d at 622.   The *Patton* court went on to state that the statute prohibiting possession of body armor was not directed at the use of the body armor in ways that threaten the instrumentalities of interstate commerce. *Id*.   The Court held the statute exceeded congressional authority to protect instrumentalities of and persons

16

of things in interstate commerce. *Id.* Similarly, unregistered firearms are not instrumentalities of interstate commerce, nor does the punishment of their possession protect the firearms while moving in interstate travel. By merely punishing the possession of unregistered firearms, the statute is not designed to protect against the use of these firearms to threaten the means of interstate commerce. This statute is not a valid exercise of congressional power under the second form of commerce regulation.

Third, Congress may regulate "activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558-59. This power allows Congress to regulate intrastate noncommercial activity, based on its effect. *Patton*, 451 F.3d at 622. To determine whether a regulation is valid under this category, courts consider "whether (1) the activity at which the statute is directed is commercial or economic in nature; (2) the statute contains an express jurisdictional element involving interstate activity that might limit its reach; (3) Congress has made specific findings regarding the effects of the prohibited activity on interstate commerce; and (4) the link between the prohibited conduct and a substantial effect on interstate commerce is attenuated." *United States v. Grimmett*, 439 F.3d 1263, 1272 (10th Cir. 2006). If the activity is commercial or economic, there is a heavy presumption that it affects more than one state and falls within congressional power. *Lopez*, 514

U.S. at 574 (Kennedy, J., concurring).   Where the regulated activity is noncommercial, the last three factors are significant. *Patton*, 451 F.3d at 624.

In *Lopez*, the Supreme Court held that possession of firearms, in itself, is not commercial or economic. 514 U.S. at 560 (holding that prohibition on firearm possession near a school by its terms had nothing to do with commerce or any sort of economic enterprise). This is so because the mere possession of a firearm does not constitute the buying, selling, production, or transportation of products or services or any activity preparatory to it. *See, United States v. Price,* 265 F.3d 1097, 1107 (10th Cir. 2001), *cert. denied*, 535 U.S. 1099 (2002).

Mere possession of an unregistered firearm, in this case a silencer, destructive device or short barreled rifle, likewise has no commercial or economic relation.  Possessing an unregistered firearm, where the item was not purchased, transported, or sold, is not connected to commercial activity.

The Supreme Court has noted that a jurisdictional hook restricting the statute to activities that have an explicit connection with or effect on interstate commerce may establish that the enactment is in pursuance of Congress' regulation of interstate commerce.  *Lopez*, 514 U.S. at 562.  As previously noted, Title 26 § 5861(d), does not contain a jurisdictional hook bringing it into the realm of interstate commerce.  26 U.S.C. 5861(d).  While

18

this does not completely remove it from Congress' commerce powers (*See, United States v. Rodia*, 194 F.3d 465, 472-73 (3d Cir. 1999), *cert. denied*, 529 U.S. 1131 (2000); *United States v. Holston*, 343 F.3d 83, 88 (2d Cir. 2003)), it is significant in the overall analysis.

In *Lopez*, the Court found that an interstate market for firearms exits and that interstate movement of firearms increases crime.  514 U.S. 563-64. However, the existence of the market and the incidence of crime did not establish that the prohibited possessions substantially affected interstate commerce.  *Id.*  The Court rejected the argument that firearm possession, standing alone, affects interstate commerce merely because it can result in violent crimes, which in turn may affect insurance rates nationwide.  *Id.* These findings apply to possession of firearms, generally, and thus are equally applicable to the case at hand. Mere possession of unregistered firearms does not substantially affect interstate commerce, notwithstanding the potential market for them or their connection to crime.

Possession of items may have a substantial and non-attenuated effect on interstate commerce in two ways.  First, possession of a good is related to the market for that good, and Congress may regulate possession as necessary and proper means of controlling its supply and demand.  *Patton*, 451 U.S. 625.  This has been applied by determining whether the prohibition on

possession of the commodity is an essential part of comprehensive legislation to regulate the interstate market in a fungible commodity. *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). Pervasive regulation by states is not enough to establish a comprehensive regulatory scheme in regard to interstate commerce. *See* Anthony A. Braga et al., *The Illegal Supply of Firearms*, 29 Crime & Just. 319, 312-24 (2002) (commenting on the extensive regulation of firearms nationwide which, nonetheless, did not establish a comprehensive regulatory scheme under *Lopez*). As in *Lopez*, the fact that firearms are highly regulated does not bring punishment for possession of unregistered firearms into a comprehensive regulatory scheme for commercial purposes.

Possession of goods may also be regulated when possession of a good is related to the use of that good, and its use may have effects on interstate commerce. *Patton*, 451 U.S. at 625. As previously stated, the Supreme Court has rejected the argument that possession of firearms has a significant impact on the national economy. *Lopez*, 514 U.S. at 563. Notwithstanding the contribution to crime and potential market for unregistered firearms, the connection to interstate commerce is too attenuated to fall within Congress' commerce power.

Given that possession of firearms is not commercial, 26 U.S.C. § 5861(d) does not have any requirement for interstate movement of the

firearms, Congress has not identified a significant effect of possession of firearms on interstate commerce, and the link between the possessing unregistered firearms and its potential effect on commerce is not significant, Congress does not have authority under this third form of regulation to regulate possession of unregistered firearms under the Commerce Clause.

These three areas of regulation: the channels of interstate commerce; the instrumentalities of interstate commerce, and persons of things in interstate commerce; and activities that substantially affect interstate commerce; are the only areas in which Congress may regulate commerce in the most cases. *See, Scarborough v. United States,* 431 U.S. 563 (1977) (holding that Congress' commerce power permitted prohibition a felon to be in possession of any firearm that had moved in interstate commerce at any time). The statute at hand is not restricted to felons in possession of unregistered firearms, and therefore the limited extension of the commerce power of *Scarborough* does not apply in this case. As demonstrated, 26 U.S.C. 5861(d) does not meet any of the permissible areas of regulation and therefore is not valid under Congress' commerce power.

### III.  Congress Enumerated Power Under the Commerce Clause Should Not Extend to Purely Intrastate Activity.

The defense is mindful of adverse precedent that suggests otherwise, however, States cannot successfully reassert the powers they retain under the Tenth Amendment until the Courts revisit and alter their expansive reading of the "commerce" that Congress may properly regulate exercising its Article I, section 8 power.  U.S. Cont. art I, § 8, cl. 3.

Supreme Court precedent has construed Congress's authority to regulate interstate commerce as allowing regulation of purely intrastate, private, noncommercial activity, as long as the regulated activity substantially affects interstate commerce.  *See, e.g. Gonzalez v. Raich*, 545 U.S. 1, 17 (2005); *Lopez*, 514 U.S. at 555-57; *Wickard v. Fillburn*, 317 U.S. 111 (1942).

The "substantial effects" test is a 20th century innovation with no textual basis in the Constitution.  It has enabled a sweeping expansion of Congress's Commerce Clause powers since the time of the New Deal.  *See Lopez*, 514 U.S. at 596 (Thomas, J., concurring); *Morrison*, 529 U.S. at 607-08; U.S. Cont. art I, § 8, cl. 3.  The test, derived from the Necessary and Proper Clause, allows Congress to regulate **intrastate** activities in order to make effective a regulation of **interstate** commerce. *Raich*, 545 U.S. at 34-35

22

(Scalia, J., concurring); *see also Garcia*, 469 U.S. at 585-86 (O'Connor, J., dissenting). But in doing so, the Court has effectively eliminated any requirement that acts of Congress be a regulation of interstate commercial activity. "Commerce" is expansively defined in a way that "threatens to sweep all of productive human activity into federal regulatory reach." *Raich*, 545 U.S. at 49 (O'Connor, J., dissenting).

In addition, the Court has abandoned any meaningful standard for the substantiality of an intrastate activity's effects on interstate commerce, requiring only that Congress "draw the circle broadly enough to cover an activity that, when taken in isolation, would not have substantial effects on commerce" in order to regulate it under its Article I, section 8 authority. *Lopez*, 514 U.S. at 600-01 (Thomas, J., concurring). By applying this "rootless and malleable" substantial effects standard for over half a century "the Court has encouraged the Federal Government to persist in its view that the Commerce Clause has virtually no limits." *Morrison*, 529 U.S. at 627 (Thomas, J., concurring); *see also Lopez*, 514 U.S. at 584-85 (Thomas, J., concurring).

The Supreme Court's construction of congressional authority to regulate interstate commerce "[comes] close to turning the Tenth Amendment on its head" and the "case law could be read to reserve to the United States

23

all powers not expressly *prohibited* by the Constitution." *Lopez*, 514 U.S. at 589 (Thomas, J., concurring).   The substantial effects test has expanded congressional Commerce Clause authority far beyond the incidental powers contemplated by the Necessary and Proper Clause.  *See Raich*, 545 U.S. at 58-66 (Thomas, J., dissenting).   Interpretation of the Commerce Clause to permit federal regulation of any activity that substantially affects interstate commerce has transformed the purpose of the clause –regulation of commerce "among the several States" as an end in and of itself—into a means for Congress to appropriate States' police powers.  *See Morrison*, 529 U.S. at 627 (Thomas, J., concurring); *Lopez*, 514 U.S. at 584-85 (Thomas, J., concurring). The "substantial effects" test is, therefore, repugnant to the federalism embodied by the Constitution.  *See Lopez*, 514 U.S. at 584-85, 60001 (Thomas, J., concurring); *Raich*, 545 U.S. at 67-74 (Thomas, J., dissenting). Accordingly, the Tenth Amendment mandates a judicial standard that yields a construction of congressional authority consistent with the text and the original meaning of the Commerce Clause.  *See Lopez*, 514 U.S. at 584-85 (Thomas, J., concurring).

The defendant submits that this expansive use of the Commerce Clause is a violation of the Tenth Amendment and the State of Kansas right to regulate the intrastate possession, manufacturing, and transfer of firearms

made in and remaining in Kansas.  The defendant had reason to believe in and rely on the law of Kansas.

## **CONCLUSION**

For the foregoing reasons, the defendant urges this Court to dismiss the charges in the Indictment.

Respectfully submitted,

s/Steven K. Gradert
STEVEN K. GRADERT
Sup. Ct. No. 12781
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: steve_gradert@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2016, I electronically filed the foregoing MOTION TO DISMISS with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Richard L. Hathaway
    Assistant U.S. Attorney
    444 S.E. Quincy, Suite 290
    Topeka, KS  66683

    Ian M. Clark
    Ariagno, Kerns, Mank & White, L.L.C.
    328 N. Main St.
    Wichita, KS  67202

One copy sent via U.S. Mail to:

    Shane Cox
    Petrolia, KS

                s/Steven K. Gradert
                STEVEN K. GRADERT
                Sup. Ct. No. 12781
                Assistant Federal Public Defender
                Federal Public Defender Office
                301 N. Main, Suite 850
                Wichita, KS 67202
                Telephone: (316) 269-6445
                Fax: (316) 269-6175
                E-mail: steve_gradert@fd.org