**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEREMY KETTLER,<br><br>Defendant. | ) | Case No. 15-10150-2-JTM |

**MOTION TO DISMISS FOR ENTRAPMENT BY ESTOPPEL**

COMES NOW, the Defendant, Jeremy Kettler, through his attorney of record, Ian M. Clark, and respectfully moves this Court for an order dismissing Counts Five and Thirteen of the First Superseding Indictment in this case based on the doctrine of Entrapment by Estoppel.

BACKGROUND

Mr. Jeremy Kettler is a decorated Army veteran of a foreign war with no serious criminal history. He has been honorably discharged from military service based on a medical discharge for multiple physical injuries he suffered during his service to this country, along with a diagnosis of Post-Traumatic Stress Disorder (PTSD. He resides in Humboldt, KS, and sometime in 2014 he met Mr. Shane Cox.

Once the state of Kansas announced he could legally make suppressors, Mr. Cox began making and selling firearm suppressors here in the state of Kansas. This Kansas law is entitled the Second Amendment Protection Act, and it says that a suppressor is a "firearm accessory," and firearm accessories that are made in the state of Kansas, and remain in the state of Kansas, are not subject to any federal law. The Kansas law goes on to state that it is illegal for federal

law enforcement to attempt to enforce federal laws that do not apply to these 'in state firearm accessories', according to the Kansas law.

When Mr. Kettler met Mr. Cox and found out that he was making suppressors pursuant to this Kansas law, he became interested in obtaining one for his own sporting use because he had suffered damage to his hearing while overseas in battle. The muffled report of his firearm during target practice was easier on his ears and less aggravating to his PTSD.

Mr. Kettler inquired of Mr. Cox about one of his suppressors for application with his particular firearm. Mr. Cox did not have any suppressors that would fit Mr. Kettler's firearm so Mr. Cox provided Mr. Kettler with a prototype made from inferior materials, simply to test the application and fit of that type of suppressor, for that type of firearm.

Mr. Ketter was impressed with the prototype he was given to test, so much so, that he made a review video and posted it on Facebook. In that video he expresses his opinion of the product and plugs the source of the suppressor, Mr. Cox and his business, Tough Guys.

This prototype suppressor, being made from inferior materials, was not meant to be a product for sale, but simply a test object. It broke fairly quickly upon testing, and was discarded by Mr. Kettler into a scrap pile.

Sometime later, Mr. Ketter received a telephone call from an agent with the ATF. On this call Mr. Ketter was asked if he had given Mr. Cox money for the prototype suppressor. Mr. Kettler's response was that he had not paid for the suppressor because it was simply a prototype, and when the prototype broke, he threw it away.

Throughout the ATF's investigation of Mr. Cox they identified at least 5 individuals who had purchased or otherwise received completed product suppressors from Mr. Cox. These were made of high end materials meant to substantially suppress the report of a firearm, and last

through substantial use. Some of these individuals were found in possession of the suppressors, and others had gotten rid of theirs either by disposal, or in commerce.

Trusting the Kansas Legislature and Kansas officials who enacted the Second Amendment Protection Act, and because they had reassured the citizens of KS that the law is valid, Mr. Kettler now finds himself as the only other defendant charged with Mr. Cox. At least five others who purchased the high-end suppressors have not been charged.

ARGUMENT AND AUTHORITIES

Defendant Kettler is charged in Count Five and Thirteen of the First Superseding Indictment with Conspiracy under 18 U.S.C. 371, and Possession of Unregistered Firearm under 26 U.S.C. 5861(d). (Doc. 27). The alleged conspiracy was to "make, receive and transfer a firearm" in violation of 26 U.S.C. 5861 with co-defendant Cox. *Id*. However, defendant Kettler had no intention to violate the laws of the United States, and believed what he was doing (possessing a prototype suppressor) had been made legal by the state of Kansas.

K.S.A. 50-1201 et seq., also known as the Second Amendment Protection Act, was enacted in 2013. This Kansas law states that a "firearm accessory . . . that is manufactured commercially or privately and owned in Kansas and that remains within the borders of Kansas is not subject to any federal law, treaty, federal regulation, or federal executive action, including any federal firearm or ammunition registration program, under the authority of congress to regulate interstate commerce." K.S.A. 50-1204.

The same Kansas law defines "firearms accessories" as "items that are used in conjunction with or mounted upon a firearm but are not essential to the basic function of a firearm, including, but not limited to . . . sound suppressors . . ." K.S.A. 50-1203(b). Therefore, under the Kansas Second Amendment Protection Act, the sound suppressor possessed by Mr.

Kettler was made in Kansas, and possessed in Kansas, and is not subject to federal regulation. At least this is what the plain language of the statute conveys to a reasonable person in the state of Kansas.

In *United States v. Staples*, the Supreme Court determined that a knowledge, or *mens rea,* element exists in the prosecution of 26 U.S.C. 5861. 511 U.S. 600 (1994). The specific issue in *Staples* was whether the government had to prove beyond a reasonable doubt that the defendant was aware of the specific attribute of the firearm he possessed that brought it within the scope of section 5861. *Id*. at 600. The *Staples* decision must be read to require knowledge that someone is possessing a "firearm" in violation of the federal prohibition in order to be found guilty of such a violation.

In this case we are not dealing with the exact same issue of whether defendant Kettler knew of the particular physical attribute of the "firearm" that brings it within federal regulation. We are dealing with a situation where defendant Kettler could not have known that any attribute of the "firearm" brought it within federal regulation because the Kansas legislature, explicitly told the citizens of the state of Kansas that a sound suppressor did not fall within federal regulation. Therefore, the *mens rea* required for a conviction of 26 U.S.C. 5861 cannot possibly be present in this case.

The defense of entrapment by estoppel is a due process challenge. *United States v. Hardridge*, 379 F.3d 1188, 1192 (10th Cir. 2004). The Court in *Hardridge* explained the elements of an entrapment by estoppel defense:

> To establish an entrapment-by-estoppel defense, a defendant must show (1) " an active misleading by a government agent . . . who is responsible for interpreting, administering, or enforcing the law defining the offense" ; and (2) " actual reliance by the defendant, which is reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation."

*Id*. The Court also importantly noted that for a person to be convicted for "exercising a privilege which the State had clearly told him was available to him . . . would be to dispense with the basic requirement that citizens receive fair warning of what actions are criminal." *Id*. The state of Kansas passed a law specifically telling citizens that they could exercise the privilege defendant Ketter did in this case. Thereafter, the Governor and Secretary of state reassured the citizens of Kansas that this law was valid, and the federal government could not impede exercise of this privilege.

In addressing the prongs of the entrapment by estoppel defense, the second is easily dealt with in this case. Defendant Kettler clearly relied on the Kansas law in that he was only in possession of the sound suppressor because he believed it was legal. There is no criminal history or other evidence to point to in order to show predisposition, or prior possession of a firearm accessory of this type. Defendant Kettler's reliance was reasonable based on the identity of who caused him to rely on the Kansas law in that it was the Kansas lawmakers. The point of law that was misrepresented and the substance of the misrepresentation are fairly self-evident here. The misrepresentation was itself a law passed by the state of Kansas, and the substance of that misrepresentation not only told citizens they could do this, but also that legal doctrine dictates that the federal government could not regulate this issue. *See* K.S.A. 50-1201 et seq.

The first prong of the defense analyzed here is based on whether there was "an active misleading by a government agent . . . who is responsible for interpreting, administering, or enforcing the law defining the offense." *Hardridge*, 379 F.3d 1188, 1192. There was obviously an active misleading by a government agent in this case. Not only did the Kansas legislature go through the entire process of passing the bill into law, but then members of the executive branch and its agencies, maintain the legality of the law and its force and effect.

The only real question becomes whether the "government agent" responsible for the active misrepresentation is one "who is responsible for interpreting, administering, or enforcing the law defining the offense." *Id*. Historically, when the courts have applied estoppel the "government agent" responsible for the misrepresentation has been an agent of the governing body seeking prosecution. *See e.g. United States v. Hardrige*, 379 F.3d 1188 at 1193; *Raley v. Ohio*, 360 U.S. 423 (1959); *Cox v. Louisiana*, 379 U.S. 559 (1965); *United States v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655 (1973).

The justification seen in the above cited cases for this application is that for the reliance to be reasonable, it would typically make sense that the misrepresentation come from someone of the governing body later attempting to prosecute. The facts here present a novel situation where the misrepresentation, while not from an agent of the federal government, came from a governing body of such character to render reliance reasonable. The precedent considering this defense should not preclude consideration here simply due to the fact that it was a misrepresentation from the state, concerning federal law.

In cases where the Supreme Court has recognized this defense, it was based on the basic principle of fairness embodied by due process. In *Cox v. Louisiana*, the Supreme Court applied estoppel when a law enforcement officer told protestors they could demonstrate in a particular area, and then arrested them. 379 U.S. 559. In *Raley v. Ohio*, the Supreme Court applied estoppel when a commission chairman told witnesses that they could assert their Fifth Amendment right against self-incrimination and decline to answer questions, after which they were prosecuted for doing so. 360 U.S. 423. In *United States v. Pennsylvania Indus. Chem. Corp.*, the Court again applied estoppel when a corporation had been convicted of discharging refuse in a manner the responsible agency had interpreted as permissible. The Supreme Court stated that the agency

constituted "a body of experience and informed judgment to which . . . litigants may properly resort for guidance." 411 U.S. 655 at 674.

The common theme among these cases is that it would be unjust for a conviction to stand when a body or agent of the government that is entrusted to properly advise citizens of what is legal and what is not, has betrayed that trust. In this case, defendant Kettler was operating under a good faith belief that the highest levels of his state government would not knowingly walk him into a federal prosecution.

WHEREFORE, based on the foregoing, Mr. Kettler prays for an order dismissing Counts Five and Thirteen of the First Superseding Indictment.

Respectfully submitted:

Ariagno, Kerns, Mank & White L.L.C.

By: **s/Ian M. Clark**
Ian M. Clark, Ks.Sp.Ct. #25595
328 North Main
Wichita, Kansas, 67202
Telephone: (316) 265-5511
Fax: (316) 265-4433
E-mail: iclark@warriorlawyers.com
Attorney for Defendant
Jeremy Kettler

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of March I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

United States Attorney's Office
The Epic Center, Suite #1200
301 North Main Street
Wichita, Kansas 67202-4812

**s/Ian M. Clark**
Ian M. Clark