# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,
    *Plaintiff,*

v.                                 Case No. **15-10150-01, 02 JTM**

**SHANE COX, and**
**JEREMY KETTLER**,
    *Defendants.*

---

### DEFENDANT'S RESPONSE TO BRIEF OF STATE OF KANSAS AND MEMORANDUM OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS PROSECUTION

---

The defendant, Shane Cox, by and through his attorneys, Steven K. Gradert and Timothy J. Henry, Assistant Federal Public Defenders for the District of Kansas, files this Response to the Brief of the State of Kansas/Attorney General in addition to a Memorandum of Supplemental Authority in support of his Motion to Dismiss Prosecution filed previously that remains pending in this case. Defendant Jeremy Kettler, through his counsel, Ian Clark, has informed defense counsel of its desire to join in this Response, to which defense counsels for defendant Cox do not object and would request this Court to permit. On behalf of this Response, defense counsels state as follows:

The State's Brief raises, as did defendants in their Motion to Dismiss, that the Second Amendment Protection Act (SAPA) is a constitutional "exercise of the police power reserved to the States of Kansas by the Tenth Amendment to the United States

Constitution." *See* Dkt # 66, State's Brief, p. 1. "[A] similar argument"[1] raised by the State of Kansas, which defendants would join and expound on further, raises Ninth Amendment arguments over the interplay between two competing constitutional authorities; those being the Second Amendment and Congress' taxing authority found at Art. I, sec. 8, cl. 1. *See* State's Brief, p. 3 ("The intent of the Second Amendment Protection Act is to reaffirm the constitutional limits on Congress's authority to regulate firearms, firearms accessories and ammunition under the Constitution and thereby protect the rights reserved to Kansas and its citizens under the Second, Ninth, and Tenth Amendments.").

### a) Competing constitutional rights.

The Ninth Amendment states, "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. Const., Amend. IX.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment guarantees to an individual the right to keep and bear arms. *Id.* at 592. As the Tenth Circuit stated, "[o]ur precedent on this matter is anchored in a single sentence contained in *Heller* [ ] which extended Second Amendment rights to private citizens for the first time in U.S. Supreme Court precedent[.]" *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015).

---

[1] State's Brief, p. 2.

Competing with this personal "right of the people to keep and bear Arms" is the taxing power of Congress found at Article I, Section 8, Clause 1, which states, "[t]he Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; . . ." Art I, sec. 8, cl. 1.

The question then becomes, is the "taxing powers'" enumeration in the Constitution one which is controlled by the Ninth Amendment's protection that it "shall not be construed to deny or disparage others retained by the people." U.S. Const., Amend. IX. The answer is clear and is specifically stated in the Second Amendment, *i.e.*, "the right of the people to keep and bear Arms, **shall not be infringed.**" U.S. Const., Amend. II.

Why is this passage of the Second Amendment controlling for purposes of the Ninth Amendment? The Supreme Court answered that in *Heller* after holding the Second Amendment guarantees an individual the right to keep and bear arms.

> This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed. . . ."[ ]

*Heller*, 554 U.S. at 592 (footnote omitted).

Thus, the general police powers have been traditionally understood to be reserved to the States or, as the Tenth Amendment states, "are reserved to the States respectively, **or to the people**." Even when enumerated, as with Congress's power to tax, the Ninth Amendment limits those powers from "deny[ing] or disparage[ing] other [rights] retained by the people." U.S. Const., Amend. IX. And the Supreme Court in *Heller* reaffirmed what has been known since *Cruikshank* was decided 140 years earlier, that the Second Amendment is a "*pre-existing* right" that is not "dependent upon" the Constitution "for its existence." It is "a right of the people" that "shall not be infringed."

That is not to say that *Heller* prohibits any form of regulation under the Second Amendment. *See Heller*, 554 U.S. at 626 (citing to "prohibitions on the possession of firearms by felons and the mentally ill."). Here, neither Mr. Cox, nor Mr. Kettler, were felons or mentally ill. The question was whether the firearms here, as defined by the Internal Revenue Code, Title 26, U.S.C. sec. 5845, were able to be regulated in the manner that would expose these citizens to a penalty of up to ten years in prison.

These firearms in this case were mostly silencers, also known as suppressors, and in one count, a short-barreled rifle that had a silencer attached making it approximately the legal barrel length of 18 inches if the barrel and the silencer were not considered separately. The government may argue the nature of these firearms makes them outside the protections of the Second Amendment. However, that argument was soundly rejected in *Heller*.

> Just as the First Amendment protects modern forms of communications, *e.g., Reno v. American Civil Liberties Union*, 521 U.S. 844, 849, 117 S. Ct. 2329, 138 L.Ed.2d 874 (1997), and the Fourth Amendment applies to modern forms of search, *e.g., Kyllo v. United States*, 533 U.S. 27, 35-36, 121 S. Ct. 2038, 150 L.Ed.2d 94 (2001), the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.

*Heller*, 554 U.S. at 582.

From the above discussion over the competing constitutional powers, it appears the defendant's position that specifically states "the right of the people to keep and bear Arms, shall not be infringed[,]" should carry the day when read with the Ninth Amendment's statement that even enumerated powers such as the taxing power of Congress "shall not be construed to deny or disparage others retained by the people." U.S. Const., Amend. IX. Is the aforementioned Second Amendment right one that is "retained by the people" as contemplated in the Ninth Amendment? Clearly, it would seem so as it is a pre-existing right that is not dependent upon the Constitution. However, the taxing power is dependent on the Constitution as it is a delegated right under Article I. But that does not make that right superior to a "right of the people . . . [that] shall not be infringed." U.S. Const., Amend. II. Thus, this interplay between the competing constitutional powers clearly sides with the defendants.

There is a position taken by the State of Kansas/Attorney General from its attached motion from the *Brady Campaign* case that defendants Cox and Kettler would disagree and dispute; although by simply attaching a document as authority

from a different case on a different issue admittedly leads to some confusion. The disconnect between the State's Brief, which incorporates in part arguments made in the *Brady Campaign* case, and defendant's present Motion to Dismiss is that the State of Kansas' position rests mostly over issues with the Commerce Clause, which defendant Cox raised in an earlier motion to dismiss, and which were preserved prior to trial.

There is no question the State of Kansas sides with defendants on their Tenth Amendment argument that SAPA is a police power reserved to the State. The State of Kansas may also be in agreement with the defendants' above argument giving greater weight to the Second and Ninth Amendments over the taxing power of Congress. However, counsels for defendants specifically disagree with that portion of the attached filing by the State in their *Brady Campaign* case which appears to concede Congress's taxing powers leaves unassailable the present prosecution.

> The Second Amendment Protection Act codifies the established limitations on Congressional authority to control firearms and ammunition under its power to regulate interstate commerce. The Act does not seek to constrain any other source of authority, such as the taxing power. The oldest federal gun control laws were originally enacted as tax regulations, and their continuing validity rests upon the continued imposition of the taxes those laws reference. *See United States v. Dalton*, 960 F.2d 121 (1992). There can be no conflict between the Second Amendment Protection Act and the 1934 National Firearms Act, which was enacted as a tax law rather than as a regulation of interstate commerce.

Attachment to State's Brief, *Brady Campaign*, Motion to Dismiss, pp. 17-18.

This is not the only confusing point in the State's Brief in this case. For example, the State's attached filing in the *Brady Campaign* case states there is no conflict between existing federal laws and state laws. *Id.* at p. 14. Yet, that is exactly what is occurring in this federal prosecution where SAPA states this federal firearm regulation "is null, void and unenforceable." K.S.A. § 50-1206. Or, where the State maintains "[t]here is no present and actual conflict between the Second Amendment Protection Act and any existing federal gun statute." Attachment to State's Brief, p. 15. Defendants' respectfully disagree. Again, these positions by the State in their Brief appear to be in conflict with those made in their attached filing from the *Brady Campaign* case, and clearly conflicts with the language of SAPA.

Given that the purpose and position of the State of Kansas is to seek to uphold the constitutionality of SAPA, they are acting in their capacity as a representative of the State of Kansas. However, as discussed above, the constitutional rights at the center of this controversy are not merely those reserved to the States, but to the People themselves. The Second Amendment speaks to these right to keep and bear arms is a right possessed by the people and not the States. The Ninth Amendment states even enumerated rights in the Constitution "shall not be construed to deny or disparage others **retained by the people**." U.S. Const., Amend. IX (emphasis supplied). And even the Tenth Amendment right that powers not delegated to the United States "are reserved to the States respectively, **or to the people**." U.S. Const., Amend. X. (emphasis supplied).Clearly, the Second Amendment right is a pre-

existing right of the people, of the individual per *Heller*, that "shall not be infringed." U.S. Const., Amend. II. The Second Amendment controls over the taxing power of Congress, and the Supremacy Clause does not enter into this inquiry between the competing constitutional rights.

### b) Where defendants were not felons or mentally ill, Second Amendment' regulation requires application of strict scrutiny.

It is defendants' position that the regulation applicable in the present prosecution under the Internal Revenue Code, Title 26, that subjects someone to up to ten years in prison for not registering your firearm and paying a $200 registration fee requires that Congress have a strong and compelling reason to regulate, *i.e.*, application of the strict scrutiny standard. However, as argued below, even under the intermediate scrutiny analysis, this taxing regulation is not a "reasonable fit" to overcome the burden it places on "law-abiding, responsible citizens" who chose to exercise their Second Amendment rights.

Most cases that have dealt with prosecutions under 18 U.S.C § 922(g)(1-9), post-*Heller*, have applied intermediate scrutiny in determining whether a felon, or an alien, or one who suffers from mental illness, is a proper regulation by Congress. *See e.g., United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010). The Supreme Court in *Heller* specifically rejected application of rational-basis test to regulations that infringe on one's protections under the Second Amendment. 554 U.S. at 628 n. 27. Thus, the question is whether the present case should apply intermediate or strict scrutiny to the present federal regulation.

The core right identified in *Heller* underlying the Second Amendment was "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. As the Sixth Circuit stated in *Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016) (en banc), "[w]hereas 'law-abiding, responsible citizens' are at the core of the Amendment's protections, 'longstanding prohibitions on the possession of firearms by felons and the mentally ill' are 'presumptively lawful.'" *Id.* at 685, quoting *Heller*, 554 U.S. at 626-27 & n. 26, 635.

Here, we are not dealing with a narrow class of felons or mentally ill persons subject to a presumptively lawful regulation under an intermediate scrutiny standard. We are dealing with "law-abiding, responsible citizens" whose records were spotless, with defendant Kettler being an Iraq war veteran, and defendant Cox's daughter presently serving in the U.S. Marines. In cases such as this that deal with a regulation over the type of weapon, rather than the class of person, the government should be held to the highest standard of strict scrutiny, *i.e.*, the Government's interest must be compelling.

However, since most of the circuit cases have resolved that Second Amendment regulation falls in the intermediate scrutiny category, defense counsel will analyze it under that standard.

Two questions are initially raised in determining if the Government has met their burden under the intermediate level of scrutiny. First, does the challenged law burden conduct that falls within the scope of the Second Amendment as historically

understood at the time of its passage? If not, then the Government's regulation is deemed valid. Clearly, the answer to this first question is yes not only due to *Heller* and its historical explanation that supports the Second Amendment; but also that both defendants Cox and Kettler believed their actions were lawful due to Kansas' Second Amendment Protection Act, which specifically preempted federal firearm registration regulation by stating it was "null, void and unenforceable." K.S.A. § 50-1206.

The second question deals with the strength of the Government's justification for restricting or regulating the exercise of defendants' Second Amendment rights. This question has been broken up into a two-step analysis requiring the Government's justification, or stated objective, 1) must be significant, substantial, or important; **and** 2) be a reasonable fit between the challenged regulation and the asserted objective. *See Tyler,* 837 F.3d at 693 (re: life-time ban for someone who experienced a mental breakdown 30 years earlier). Defendants would argue neither step is met in this case.

The stated objective or justification of the regulation is for a person to register particular firearms and pay a $200 registration fee allowing the federal government to track those who make, possess or transfer these particular firearms. Is that significant, substantial or important? Defendants submit it is not. However, as both steps must be proven by the Government under intermediate scrutiny, it clearly is not a reasonable fit to restrict one's Second Amendment rights by this regulation,

10

especially where the punishment is up to ten years in prison. The severity of the law's burden on defendant's Second Amendment rights clearly fails this second step.

Since neither defendant is subject to the categorical disqualification suggested in *Heller* that tilts the scrutiny analysis in favor of a presumptively valid regulation, this factor favors a finding in defendants' favor under the intermediate scrutiny test. The challenged regulation is a registration law that collects fees under the Internal Revenue Code. It is not a gun-safety regulation under Title 18 of the Criminal Code, where Congress has found certain individuals pose a risk to themselves or society. These arguments were raised as well in defendant Cox's motion to dismiss, and need no further elaboration here.

WHEREFORE, for the above and foregoing reasons, and those previously raised in the pending motion to dismiss, defendants Shane Cox and Jeremy Kettler pray this Court sustain this Motion and dismiss this prosecution.

Respectfully submitted,

s/Steven K. Gradert
STEVEN K. GRADERT, Sup. Ct. No. 12781
Assistant Federal Public Defender
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
Email: steve_gradert@fd.org
Counsel for defendant Cox

and

s/Timothy J. Henry
TIMOTHY J. HENRY, Sup. Ct. No. 12934
Assistant Federal Public Defender
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
Email: tim_henry@fd.org
Counsel for defendant Cox

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2016, I electronically filed the foregoing DEFENDANT'S RESPONSE TO BRIEF OF STATE OF KANSAS AND MEMORANDUM OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS PROSECUTION with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| Richard L. Hathaway<br>Assistant U.S. Attorney<br>rich.hathaway@usdoj.gov | Derek L. Schmidt<br>Kansas Attorney General<br>derek.schmidt@ag.ks.gov |
| Jeffrey A. Chanay<br>Chief Deputy Attorney General<br>jeff.chanay@ag.ks.gov | Stephen R. McAllister<br>Solicitor General of Kansas<br>steve.mcallister@trqlaw.com |
| Dwight R. Carswell<br>Assistant Solicitor General<br>dwight.carswell@ag.ks.gov | Bryan C. Clark<br>Assistant Solicitor General<br>bryan.clark@ag.ks.gov |

Ian M. Clark
Ariagno, Kerns, Mank & White, LLC
328 N. Main St.
Wichita, KS 67202
iclark@warriorlawyers.com

One copy hand delivered to:

    Shane Cox
    Petrolia, Kansas

                                      s/Timothy J. Henry
                                      TIMOTHY J. HENRY, Sup. Ct. No. 12934
                                      Assistant Federal Public Defender
                                      301 N. Main, Suite 850
                                      Wichita, KS 67202
                                      Telephone: (316) 269-6445
                                      Fax: (316) 269-6175
                                      Email: tim_henry@fd.org
                                      Counsel for defendant Cox